UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

AUG 1 3 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION ) No. 4:19 MJ 6228 PLC
INFORMATION, CELL SITE )
INFORMATION, AND OTHER ) **FILED UNDER SEAL**
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 845-4006. )

## APPLICATION

COMES NOW the United States of America, by and through its attorneys, Jeffrey B.

Jensen, United States Attorney for the Eastern District of Missouri, and John R. Mantovani,

Assistant United States Attorney for said District, and hereby makes application to this Court for

a warrant and order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) and 3123,

authorizing agents/officers of the Drug Enforcement Administration (hereinafter referred to as

"investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies, to

obtain records and location information, including precision location information, cell site location

information, and other signaling information, associated with the following cellular telephone,

which is further identified as follows:

**TELEPHONE NO.:** (314) 845-4006

**ESN/IMSI NO.:** Unknown

**SUBSCRIBER:** Unknown

**ADDRESS:** Unknown

(hereinafter the "**subject cellular telephone**").

## I.     Introduction & Relief Requested

1.     The undersigned applicant for the Government is an Assistant United States Attorney in the Office of the United States Attorney for the Eastern District of Missouri, and an "attorney for the Government," as defined in Fed. R. Crim. P. 1(b)(1)(B).   Therefore, pursuant to Title 18, United States Code, Sections 2703(c) and 3122(a)(1), the undersigned may apply for an Order authorizing the disclosure of the telecommunication records and information requested herein.

2.     The **subject cellular telephone** is serviced by T-MOBILE (hereinafter referred to as "the Service Provider").    The records and information requested herein are directed at location-related information and subscriber information associated with the **subject cellular telephone**, and may include information related to when the **subject cellular telephone** is located in a protected space, such as a residence.   This application does not seek to compel or acquire the disclosure of the content of any communications.

3.     The **subject cellular telephone** is currently being used in connection with violations of Title 21, United States Code, Section(s) 841(a)(1), 846, 843(b) 848, and Title 18 United States Code, Sections(s) 1956 and 1957 (hereinafter referred to as the "**subject offenses**"), by **Keyshia HARRIS**, and others known and unknown.

4.     The Government makes this application upon a showing of probable cause. Attached to this application and incorporated by reference as if fully set out herein is the affidavit of Task Force Officer James Gaddy with the Drug Enforcement Administration which alleges facts in order to show that there is probable cause to believe that evidence of the commission of the above-described **subject offenses** can be obtained by locating and monitoring the location of the

2

**subject cellular telephone**, without geographic limitation within the United States, including by obtaining precision location information (e.g., GPS information), cell site information, signaling information, and records concerning the **subject cellular telephone** for a period of forty-five (45) days measured from the date the Warrant is issued -- *i.e.*, from August 13, 2019, to September 26, 2019, 11:59 p.m. (CT).

5.     The present application requests relief in three forms.     First, the application requests relief in the form of precision location information, including GPS information, associated with the **subject cellular telephone**.     Second, the application requests subscriber records and cell site information, which does not include precision location information, associated with the **subject cellular telephone**. Third, the application requests authorization for the installation and use of pen register and trap-and-trace devices.

## II.     Precision Location Information Request

1.     The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System (GPS) information, but not the contents of any communications, associated with the **subject cellular telephone**, for a period of forty-five (45) days from the date of any warrant issued hereon -- *i.e.*, from August 13, 2019, to September 26, 2019, 11:59 p.m. (CT).

2.     The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

3

(c)     Records concerning electronic communication service or remote computing service.--(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record of other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--

(A)     obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.      The Court has jurisdiction to issue a warrant for the disclosure of precision location information, as requested herein, because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c).    Specifically, the Court has jurisdiction over the offense being investigated.

4.      Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703.    In particular, Section 2703(g) states:

Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

5.      Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer.    In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

### III.   Cell Site Location Information Request

1.      The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to provide certain telecommunication records and information, including cell site location information, but not the contents of any communication, for the time period of thirty (30) days prior to the warrant and for forty-five (45) days from the date of the requested warrant -- *i.e.*, from August 13, 2019, to September 26, 2019, 11:59 p.m. (CT).   In particular, the Government requests the following telecommunication records and information:

(1)      subscriber information and all telephone numbers, ESN, MIN, IMEI, MSID or IMSI numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

(2)      subscriber information available for any originating telephone number;

(3)      Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls at the **subject cellular telephone**) for the above-specified time period;

(4)      cellular telephone records and information pertaining to the following, for the above-specified time period:

5

(a)  call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)  cell site activation information, including information identifying the antenna tower receiving transmissions from the **subject cellular telephone** number, and any information on what portion of that tower is receiving a transmission from the **subject cellular telephone** number, at the beginning and end of a particular telephone call made to or received by the **subject cellular telephone** number;

(c)  numbers dialed;

(d)  call duration;

(e)  incoming numbers if identified;

(f)  signaling information pertaining to that number;

(g)  a listing of all control channels and their corresponding cell sites;

(h)  an engineering map showing all cell site tower locations, sectors and orientations; and

(i)  subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the **subject cellular telephone**.

(j)  historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD) and

(k)     Internet Protocol (IP addresses) utilized by and signaled to and from the **subject cellular telephone**.

2.     The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

> (c)     Records concerning electronic communication service or remote computing service.--(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record of other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--

> (A)     obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.     The Court has jurisdiction to issue a warrant for the disclosure of requested telecommunications records, including cell site records because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c). Specifically, the Court has jurisdiction over the offense being investigated.

4.     Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703. In particular, Section 2703(g) states:

> Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

7

5.     Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer.    In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

### IV.     Pen Register, Trap-and-Trace Request

1.     The Government's application seeks an Order, pursuant to Title 18, United States Code, Section 3122, authorizing the installation and use of pen register and trap-and-trace devices, including enhanced caller identification, as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, and including an Order authorizing the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information transmitted by the **subject cellular telephone** number further identified herein, and a trap-and-trace device, including enhanced caller identification, which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **subject cellular telephone** number, direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, for the time period from August 13, 2019, to September 26, 2019, 11:59 p.m. (CT).

2.     In making this application, the Government does not seek the contents of any communication, such that other legal process would be required.

8

3.      As previously outlined, the Government certifies that the information likely to be obtained through the aforesaid pen register and trap-and-trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

4.      The Government further requests that the Order direct the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, here incorporated by reference, and any other applicable service providers, to initiate caller identification on the subject cellular telephone number listed above, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers.

5.      The Government further requests that the Order direct the furnishing of information, facilities, and technical assistance, as necessary, to unobtrusively accomplish the installation and use of the pen register and trap-and-trace devices, including enhanced caller identification, by the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications and any other applicable service providers, and with a minimum of disruption of normal telephone service.

6.      The Government further requests that the Order direct that the results of the pen register and trap-and-trace devices, including enhanced caller identification, be provided to the agents/officers of the investigative agency(ies) at reasonable intervals for the duration of the Order.

### V.      **Changed Numbers, Compensation and Sealing**

1.      The Government requests that should the subject cellular telephone and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen

register and trap-and-trace devices remain in effect for any new telephone to which the subject cellular telephone listed above is changed, throughout the effective period of such Order.

2.     The Government further requests that the Order direct that the lead investigative agency provide the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

### VI.     Sealing, Notification and Miscellaneous Considerations

1.     Pursuant to Title 18, United States Code, Section 2703, the Government requests that the Court direct that the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the following:

>      (1) subscriber information;

>      (2) length of service (including start date);

>      (3) the types of service utilized;

>      (4) instrument number or other subscriber number or identity, including any temporarily assigned network address;

>      (5) all available names, addresses, and identifying information, and other subscriber and service feature information;

>      (6)  toll records including incoming and outgoing telephone numbers;

10

(7) credit information, billing information, and air-time summaries for available

service periods, for the IP (internet protocol) addresses being utilized by and

signaled to and from the aforementioned subject cellular telephone,

for the telephone numbers being dialed to and from the aforementioned **subject cellular telephone**

at reasonable intervals for the past thirty (30) days from the date of this Warrant and at reasonable

intervals for up to forty-five (45) days from the date of this Warrant -- *i.e.*, from August 13, 2019,

to September 26, 2019, 11:59 p.m. (CT).

2.      Pursuant to Title 18, United States Code, Section 2703(c)(3), the Government entity

or agency receiving these records or information as a result of this application and accompanying

warrant and order will not provide notice to the subscriber or customer of the **subject cellular**

**telephone**.

3.      This Court has authority under Title 18, U.S.C., Section 2705(b) to issue "an order

commanding a provider of electronic communications service or remote computing service to

whom a warrant, subpoena, or court order is directed, for such period as the court deems

appropriate, not to notify any other person of the existence of the warrant, subpoena, or court

order." *Id.*

4.      In this case, such an order is appropriate because the Government seeks the warrant

in part under the authority granted to this court pursuant to Title 18, U.S.C., Section 2703.   The

requested warrant is related to an ongoing criminal investigation that is not public and this portion

of the investigation is not known to the subjects of the investigation.   Premature notification may

alert the subject(s) to the existence of the investigation. If the subjects were notified about the

existence of the requested warrant, the subjects could destroy evidence.   Accordingly, there is

reason to believe that notification of the existence of the warrant will seriously jeopardize the investigation, including giving the subjects an opportunity to: flee, destroy and/or tamper with evidence; change patterns of behavior; or notify confederates. *See* Title 18, U.S.C., Section 2705(b)(2), (3), and (5). Based on the nature and circumstances of the investigation, there is also reason to believe that notification of the existence of the warrant will result in endangering the life or physical safety of an individual, or the intimidation of potential witnesses. *See* Title 18, U.S.C., Section 2705(b)(1) and (4).

5. Based on the foregoing, pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2) and 2705(b), the Government requests that the Court direct the Service Provider and the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, not to disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order, to a subscriber or lessee or to any other person, except that the provider may disclose the warrant and any Order to an attorney for the provider for the purpose of receiving legal advice.

6. The information requested herein does not require a physical intrusion or physical trespass into any protected space. Accordingly, it is respectively requested that the warrant authorize the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain the location information described herein at any time, day or night.

7. The Government further requests that the Order direct that the investigative agency(ies) provide the telecommunication providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service

12

providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

8.      In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation, including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit of Task Force Officer James Gaddy with the Drug Enforcement Administration, which is attached hereto and made a part hereof, applicant requests this Court to issue a Warrant authorizing agents/officers of the Drug Enforcement Administration (the investigative agency(ies)), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information associated with the **subject cellular telephone**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this ___13th___ day of August, 2019.

Respectfully submitted,

JEFFREY R. JENSEN
United States Attorney

JOHN R. MANTOVANI, #50867MO
Assistant United States Attorney

13

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

### T-MOBILE
and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

## ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS

Last Update: 06/21/2018

**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**AUG 1 3 2019**

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION        )
OF THE UNITED STATES OF AMERICA        )
FOR A WARRANT TO OBTAIN RECORDS,       )
LOCATION INFORMATION, INCLUDING        )
PRECISION LOCATION INFORMATION,        )
CELL SITE INFORMATION, AND OTHER       )
SIGNALING INFORMATION ASSOCIATED       )
WITH THE CELLULAR TELEPHONE            )
HAVING THE NUMBERS (314) 845-4006.     )

No. 4:19 MJ 6228 PLC

**FILED UNDER SEAL**

## **AFFIDAVIT**

James Gaddy, being duly sworn, deposes and says that he is a Task Force Officer with the

Drug Enforcement Administration, duly appointed according to law and acting as such.

## I.     **INTRODUCTION**

I am a Task Force Officer with the Drug Enforcement Administration and have been since

2010.   I have been a deputized Task Force Officer with the Drug Enforcement Administration

(DEA) since January 2010 and am currently assigned to an Enforcement Group of the St. Louis

Division Office.    Prior to my DEA assignment, I was a sworn police officer with the St. Charles

County Police Department and Breckenridge Hills Police Department for approximately 20 years.

During the course of my law enforcement experience I have participated in numerous

investigations involving controlled substances.    I have conducted investigations of a variety of

illegal drug-trafficking and money-laundering organizations.      I have participated in

investigations which led to the seizure of illegal drugs, weapons, and assets derived from the sale

of illegal drugs, and the subsequent felony arrests of those individuals involved.    I have

participated in numerous drug-related training courses throughout my law enforcement career.    I

am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses.    As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

## II.   PURPOSE OF AFFIDAVIT

Upon information and belief, and as explained in greater detail below, T Mobile cellular telephone bearing Missouri-based number **(314) 845-4006** (hereinafter the "**subject cellular telephone**") has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1), 846, 843(b) 848, and Title 18 United States Code, Sections(s) 1956 and 1957 (hereinafter referred to as "the subject offenses"), by **Keyshia HARRIS**, and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information from a cell site simulator, in an effort to locate and monitor the location of the **subject cellular telephone**.

I further state that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned **subject offenses** as well as to the identification of individuals who are engaged in the commission of those criminal offenses and related crimes.

### III.    RELIABILITY OF CONFIDENTIAL SOURCE INFORMATION

During the initial commencement of this investigation, members of the investigative team utilized information from two DEA Confidential Sources (hereinafter CS-1 and CS-2).    Both CS-1 and CS-2 have been cooperating with DEA since May 2019 in other unrelated investigations. CS-1 and CS-2 cooperation has led to arrests, drug seizures and indictments.    CS-1 has prior felony convictions for drug offenses and is being financially compensated for his/her cooperation. CS-2 has no prior felony convictions and being financially compensated for his/her cooperation. CS-1 and CS-2 often work in tandem based on their underlying relationship.    The information provided by CS-1 and CS-2 has been corroborated and is believed to be reliable based upon law enforcement actions, several controlled drug purchases, recorded telephone conversations over the **subject cellular telephone**, recorded face-to-face meetings, telephone toll analysis, and other related intelligence ascertained throughout the investigation.

### IV.    INVESTIGATION AND PROBABLE CAUSE

In January 2019, during a separate DEA St. Louis investigation, investigators learned of **Keyshia HARRIS ("HARRIS")** involvement in the distribution of heroin and/or fentanyl in the St. Louis Metropolitan area garnered from a Source of Information ("SOI").    The SOI indicated **HARRIS** was a member in the violent St. Louis-based street gang "270 Sullivan Mob", which is known to investigators as being a Blood Faction.    Additionally, the SOI believed **HARRIS** was

being sourced with heroin and/or fentanyl by Guy GOOLSBY ("GOOLSBY"), also a known member and source to the "270 Sullivan Mob".   In May 2019, GOOLSBY was indicted in fifteen-person conspiracy in the Eastern District of Missouri for his involvement in large scale cocaine, heroin, and fentanyl trafficking from Mexico, through Texas and Florida, to the St. Louis area under 4:19-CR-00412 AGF (PLC).   At the present time, GOOLSBY is being held by the United States Marshal Service until his case is fully adjudicated.   Since GOOLSBY's indictment, investigators have learned **HARRIS** has continued in her ability to distribute ounce quantities of heroin and/or fentanyl and is believed to have acquired a new source of supply other than GOOLSBY.   This belief is based on information from CS-1 and CS-2, consensually recorded telephone conversations with **HARRIS** on her **subject cellular telephone**, and several controlled purchases from **HARRIS**.

## A.   July 10, 2019 Fentanyl Purchase from Keyshia HARRIS.

On July 9, 2019, investigators directed CS-2 to prearrange a purchase of $900.00 worth of heroin/fentanyl from **HARRIS** for the following day (July 10, 2019).[1]   Although this was call was not recorded and/or conducted in the presence of investigators, the call was later verified through toll analysis of **HARRIS'** predecessor telephone.

On July 10, 2019, CS-2 was directed by investigators to place an outgoing call to **HARRIS** on **HARRIS**'s predecessor telephone, Illinois-based telephone number (618) 922-4234 (predecessor telephone) to discuss the potential heroin/fentanyl purchase.   This call was not recorded but conducted in the presence of two DEA investigators while utilizing the speaker phone

---

1    I know from training and experience that in recent years the synthetic drug fentanyl and its' analogues are being sold as a substitute for heroin. The fentanyl or its' analogues are mixed with heroin to create a more potent, and subsequently more dangerous, opiate.  Although often still referred to as heroin by distributors and users, the drug actually being distributed is fentanyl, a fentanyl analogue, or a mixture of fentanyl, its analogues, and heroin.

function on CS-2's cellular device.   Besides the telephone conversation being conducted in the presence of investigators, the call was also verified by investigators by reviewing CS-2's call history log and later toll analysis of **HARRIS**' predecessor telephone.

At approximately 11:32 a.m., CS-2 placed an outgoing call to **HARRIS**, on her predecessor telephone.   During the monitored telephone conversation, CS-2 indicated they (CS-1 and CS-2) were "ready" (conduct drug transaction). At that time **HARRIS** directed CS-2 to come directly to **HARRIS**' known residence, located at 2834 Victor, St. Louis, Missouri.

CS-1 and CS-2 were provided $900.00 Official Advanced Funds (OAF) in order to purchase the heroin/fentanyl from **HARRIS** and equipped with a covert recording device. Followed and observed by investigators, CS-1 and CS-2 traveled directly to **HARRIS**' residence.

Upon arrival, CS-1 and CS-2 entered the **HARRIS**' residence.   While CS-1 and CS-2 were inside **HARRIS**' residence, investigators observed a gray Chevrolet Tahoe bearing Missouri license plate SR2-W5X pull up and park directly in front of **HARRIS**' residence.[2]   After parking, the driver and sole occupant remained in the vehicle.   Shortly thereafter, investigators observed **HARRIS** exit her residence and enter the front passenger seat of the Tahoe.   Moments later, **HARRIS** exited the Chevrolet Tahoe and re-entered her residence and the Tahoe immediately drove away.   Investigators believed the driver of the Tahoe had delivered the heroin/fentanyl to **HARRIS** that was intended to be sold to CS-1 and CS-2, and began moving surveillance of the Tahoe.   A portion of investigators remained at **HARRIS**' residence until the conclusion of the drug transaction between **HARRIS** and CS-1 and CS-2.   Moving surveillance led investigators to a secured gated apartment complex, located at 4451 Forest Park, St. Louis, Missouri.   To avoid

---

2 The Chevrolet Tahoe bearing Missouri license plate SR2-W5X is registered to Grace Shumpert at 4854 Pineneedle Trail, Florissant, Missouri.

compromising the investigation, investigators did not follow the Tahoe immediately into the secured parking lot to the apartment complex.    Due to the time delay when investigators were eventually able to enter the secure parking lot, investigators were unable to determine what portion of the apartment the unknown male entered.    Surveillance was terminated.

While one group of investigators were following and observing the Tahoe, CS-1 and CS-2 conducted the transaction with **HARRIS**.    Approximately 30 minutes after they entered, CS-1 and CS-2 departed **HARRIS'** residence and met with investigators at an undisclosed location. CS-1 and CS-2 relinquished the purchased fentanyl and covert recording device to investigators. CS-1 and CS-2 indicated while they waited inside **HARRIS'** residence, **HARRIS** explained her new source was bringing the dope over and should arrive shortly.    CS-1 and CS-2 stated **HARRIS** eventually exited her residence and reappeared moments later, ultimately providing the fentanyl to CS-1 and CS-2.    The timing **HARRIS** exiting the residence and re-entering with the fentanyl described by CS-1 and CS-2 and investigators observing **HARRIS** meeting with the driver if Tahoe matches.

The purchased fentanyl was later submitted to the St. Louis City Metropolitan Crime Lab for analysis, which revealed 9.53 grams of fentanyl.

**B.    July 31, 2019 Fentanyl Purchase from Keyshia HARRIS**

On July 30, 2019, investigators directed CS-1 and CS-2 to arrange for another purchase of $700.00 worth of heroin/fentanyl from **HARRIS** on the following day (July 31, 2019).    CS-2 indicated he/she called **HARRIS** over the predecessor telephone, and **HARRIS** directed CS-1 and CS-2 to come to her residence on July 31, 2019 during the morning hours.    This call was verified

by investigators reviewing CS-2's history log and later confirmed through toll analysis of **HARRIS**' predecessor telephone.

During the morning hours of July 31, 2019, investigators met CS-1 and CS-2 at an undisclosed location.   While initially meeting with CS-1 and CS-2, CS-2 received an incoming call from **HARRIS**' predecessor telephone at approximately 11:20 a.m.   Investigators directed CS-2 to utilize his/her speaker function in order for investigators to also monitor the conversation between CS-2 and **HARRIS**.   CS-2 stated he/she was ready to meet **HARRIS**, but **HARRIS** indicated she was at juvenile court for her son.   **HARRIS** then directed CS-1 and CS-2 to come to the juvenile court and **HARRIS** would have her source deliver the dope while her son's hearing was at recess.

Investigators then provided CS-1 and CS-2 with $700.00 OAF to purchase the heroin/fentanyl and covert recording device.   CS-1 and CS-2 travelled directly to the St. Louis City Family Court building located at 920 Vandeventer Avenue, St. Louis, Missouri, being followed by investigators.

At approximately 11:35 a.m., CS-1 and CS-2 arrived to the family court building and immediately met with **HARRIS**.   Investigators observed CS-1, CS-2, and **HARRIS** converse in the parking lot of the family court building.

At approximately 12:00 p.m., investigators observed a silver Chevrolet HHR, bearing Missouri license plate EC6-R7A arrive.[3] The driver and sole occupant was the same man who **HARRIS** met with in the Tahoe during the July 10, 2019 transaction.   That same man met with **HARRIS** very briefly and the left the parking lot.   **HARRIS** then re-established contact with CS-

---

3 The registered owner of the Chevrolet HHR is Grace Shumpert at 4854 Pineneedle Trail, Florissant, Missouri; the same registered owner at the Chevrolet Tahoe during the July 10, 2019 fentanyl transaction.

1 and CS-2, completed the drug transaction, and CS-1 and CS-2 departed the area with investigators following.

Investigators met with CS-1 and CS-2 at a pre-determined location, where CS-1 and CS-2 relinquished the purchased heroin/fentanyl and covert recording device.   CS-1 and CS-2 indicated the black male that arrived in the Chevrolet HHR is **HARRIS'** new source and apparently the father to one of **HARRIS'** children.

The seized heroin/fentanyl has been submitted to the DEA Lab for later analysis.

### C.   Identification of Keyshia HARRIS' Subject Cellular Telephone.

On August 6, 2019, investigators directed CS-1 and CS-2 to arrange for the purchase of heroin/fentanyl from **HARRIS** on the following day (August 7, 2019).   CS-2 indicated he/she called **HARRIS** over the predecessor telephone and **HARRIS** directed CS-1 and CS-2 to contact her (**HARRIS**) when CS-1 and CS-2 has the money for the purchase.

During the early morning hours of August 7, 2019, CS-2 received an incoming electronic communication (text message) from Missouri-based telephone number (314) 845-4006 (hereinafter: "**subject cellular telephone**").

**August 7, 2019 – 7:27 a.m.**
Incoming text message from the **subject cellular telephone** utilized by **HARRIS**:

**HARRIS**:            "This keyshia" (Keyshia **HARRIS**)

Through training, experience, and the instant investigation, investigators believe this text message consisted of **HARRIS** informing CS-2 that **HARRIS** had acquired a new cellular device and to no longer call her predecessor telephone. Investigators are familiar with drug traffickers constant transiting from cellular device to cellular device strictly to thwart law enforcements ability to track their whereabouts and/or monitor their conversations.

**D.    August 7, 2019 Fentanyl Purchase from Keyshia HARRIS.**

During the early morning hours of August 7, 2019, investigators met with CS-1 and CS-2 at a pre-determined location.   CS-2 was directed by investigators to place an outgoing recorded call to **HARRIS** over the **subject cellular telephone** to discuss the pending heroin/fentanyl purchase.   Portions of the transcribed telephone conversation are directly quoted and explained below.   In light of the coded language, I have set out in parenthesis what investigators believe to be the meaning of the language based upon my training and experience:

**August 7, 2019 – 10:35 a.m.**
Outgoing call to the **subject cellular** telephone utilized by **HARRIS:**

| | |
|---|---|
| **HARRIS:** | Where ya (CS-1 and CS-2) at? |
| CS-2: | Leaving the ATM, about 10 or 15 minutes away. |
| **HARRIS:** | Alright, I'm down here at my daughter's house (1319 14th Street. St. Louis, MO) |
| CS-2: | Down off of… |
| **HARRIS:** | O'Fallon (O'Fallon Street intersections 14th Street) |
| CS-2: | Hey did you talk to your dude (source of drugs), we going to do better (more heroin/fentanyl for the price)? |
| **HARRIS:** | Just pull up (meet here at 1319 14th Street). |

Through training, experience, and the instant investigation, investigators believe **HARRIS** was directing CS-2 to meet **HARRIS** at **HARRIS** daughters' house in order to complete the heroin/fentanyl transaction.

Following the recorded telephone conversation, investigators provided CS-1 and CS-2 with $600.00 OAF to purchase the heroin/fentanyl and covert recording device.   Shortly thereafter,

CS-1 and CS-2 departed the pre-determined location and travelled directly to **HARRIS** daughters' residence located at 1319 14th Street, St. Louis, Missouri, while being followed by investigators.

At approximately 10:54 a.m., CS-1 and CS-2 arrived at **HARRIS** daughters' house and met **HARRIS** outside.   While the CS' and **HARRIS** conversed, at approximately 11:00 a.m., investigators observed a red in color Cadillac Brougham, bearing Missouri license plate CT5-E0K pull up and park in front of 1319 14th Street.   Immediately, investigators observed **HARRIS** walk away from the CS' and make contact with the black male driver of the Cadillac Brougham. Investigators were able to see the driver of Cadillac and identified him as the same man from the Tahoe on July 10 and the HHR on July 30.   Moments later, **HARRIS** walked away from the Cadillac Brougham and made contact with the CS-1 and CS-2 again.   Shortly thereafter, the Cadillac Brougham departed the area.

Following the Cadillac Brougham's departure, CS-1 and CS-2 departed the area and travelled directly to the pre-determined location, with investigators following.   CS-1 and CS-2 relinquished the purchased heroin/fentanyl and covert recording device.   CS-1 and CS-2 indicated they also obverted the driver of the Cadillac Brougham and they also identified the driver as the same man who delivered the heroin/fentanyl during the July 31, 2019 transaction.

The purchased heroin/fentanyl has been submitted to the DEA Lab for analysis.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 846 and 841(a)(1) (the **subject offenses**). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your

affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

### Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.   Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.     Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.     Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all

telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.   Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.   In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data.   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers.   Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government.   The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service

providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.    Furthermore, the criminal conduct being investigated is not limited to the daytime.    Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.    Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

## Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy.   There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Section(s) 841(a)(1), 846, 843(b) 848, and Title 18 United States Code, Sections(s) 1956 and 1957.

8-13- 2019
DATE

James Gaddy
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this ___13___ day of August, 2019.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

### T-MOBILE

and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

## ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR
## ELECTRONIC COMMUNICATIONS          Last Update: 06/21/2018